IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | No.  1:20-cr-52 (LO) |
| ABDULLAH ABDOW SAYF, ) | |
| ) | |
| Defendant. ) | |

**ABDULLAH  SAYF'S POSITION ON SENTENCING**

COMES NOW the Defendant, Abdullah Abdow Sayf, by and through counsel, and respectfully submits his position with respect to sentencing to this Honorable Court.  Mr. Sayf entered guilty pleas to a two-count Information charging Conspiracy to Commit Kidnapping in Aid of Racketeering and Use and Carry of a Firearm During and in the Relation to a Drug Trafficking Crime.  He entered into an agreement with the Government that the parties would recommend to the Court consecutive sentences of the maximum ten-year sentence on the Conspiracy charge and the minimum sentence of five years on the Firearm charge.  It is the position of Mr. Sayf in consideration of the factors set for in 18 U.S.C. § 3553, Mr. Sayf's acceptance of responsibility, and his role in the offense, the agreed upon sentence is appropriate at this time.

**I.      PROCEDURAL HISTORY AND INCARCERATION**

Mr. Sayf has been consistently in federal custody since February 25, 2019.  He was initially detained as a material witness in this matter.

 The information in this case did not issue until February 20, 2020 almost a year later. On February 20, 2020, Mr. Sayf entered his guilty pleas.

It is clear that Mr. Sayf should be given credit for the entire term he has been incarcerated. It is less clear how he will get that credit. 18 U.S.C. § 3585(b)(1) requires that a defendant be given credit for a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences as a result of the offense for which the sentence was imposed. Our concern is that the Bureau of Prisons may not be aware that the first year that Mr. Sayf was held as a material witness was official detention "as a result of the offense for which the sentence was imposed". This Court cannot order that the Bureau of Prisons give Mr. Sayf credit. *United States v. Wilson*, 503 U.S. 329 (1992). Therefore, we are limited in the requests that we can make to ensure he gets the credit. The most obvious request is to sentence Mr. Sayf to one year less than the agreed sentence. If the court is unwilling to do so, Mr. Sayf would request that the court make recommendations in its order with an explanation as to the reason Mr. Sayf is entitled to the credit.

## II.   PRESENTENCE REPORT AND GUIDELINE CALCULATION

On page 40 of the Presentence Report, the probation officer notes the defendant's objections to paragraphs 69-72. Mr. Sayf submits that the activities recorded in those paragraphs are simply too attenuated to be included in this report. Every crime that a gang member and/or gang associate commits is not necessarily a crime related to the conspiracy. Mr. Sayf did not object to many paragraphs that had no relevance to him, but were sufficiently linked to the conspiracy. These four paragraphs fail to factually link the offenses described to the conspiracy.

Mr. Sayf has no objection to the probation officer's calculation of the guidelines.

## III.   APPLICATION OF THE 18 U.S.C. 3553(a) SENTENCING FACTORS

This Court must impose a sentence which is sufficient, but not greater than necessary to

accomplish the goals set forth in § 3553 (a) (2) In reaching the appropriate sentence, the Court must weigh the guideline recommendation, along with the statutory factors of 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220 (2005).

The statutorily enumerated factors which the court must consider include: a) the nature and circumstances of the offense and the history and characteristics of the defendant, b) the kinds of sentences available, c) the guidelines range, d) the need for restitution, e) the need to avoid unwarranted sentencing disparities, and f) the need for the sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3553(a).

### A. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Sayf is only twenty years old. His parents emigrated from Somalia before he was born. They had five children, three girls and two boys. Abdullah was the youngest child.

The parents were strict and hard working. They had come to the United States to find a better life and they were intent on making that happen, especially for their children. As his sister described the family situation, "we didn't have a lot, but we didn't know it." The Sayfs created a tight-knit, close nuclear family with healthy, fun, good memories.

The family extended into the community. They were active participants in the Somali-American community. As the community activities were family oriented, Abdullah interacted on a regular basis with the outside community. The attached letters from adults who knew Abdullah are helpful in giving the court a picture of the young man:

3

"[H]e is always polite, and kind towards others. Also, he was planning to attend college and follow in the footsteps of siblings. . . " Mohamed Sharif

"He was always very kind and humble. He also had a quiet way about him, but with a bright sense of humor and infectious laugh. . . . Abdinasir Abdi

"Abdullah is a smart kid, energetic, independent and funny teenager. He use to make my - much younger - sons laugh a lot. I have always expected Abdullah to go on and do well, graduate from good school like his siblings and become a good citizen. . . . " Abdulrahman Ahmed

"I have experienced an individual who was always a kind and conscientious child, works hard, and carries themselves in a polite, respectable manner. I have had the pleasure of watching him grow up from a toddler to child and through his teenage years. In addition, Abdullah is a family-person who has always presented themselves with levelheadedness and grace." Saadia Mervette Abdu

Equally important to the Sayf family was the mosque they attended. The mosque they attended had invested in a youth director who kept them busy all the time. Youth activities took up the entire weekend for the Sayf children. They were so involved that they would beg their parents to go to the mosque at every opportunity.

Mr. Sayf's family uses adjectives such as empathetic, compassionate, respectful, and caring to describe him. Throughout his incarceration, they continue to speak daily.

The passage of time brought change to the family. Abdullah's older siblings went off to college and on to start their own lives. All four of Abdullah's siblings went to college. The mosque redirected its funding and there were fewer opportunities for interaction. The young people started to lose their sense of belonging.

Abdullah in particular began to struggle. In the fifth grade, he was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). He was prescribed Adderall, but with the drug came the side effects of headaches, decreased appetite, and loss of interest in normal

4

activities.

Although school was a struggle, he now has his GED. At one point, he registered for online college courses, but had not earned any college credits.

He held a job at Giant as a stocker and has performed volunteer work in the community. While h does not have much of an employment history it is important to note that he was only a teenager when he was arrested.

As a teenager, Abdullah began to get into trouble. He was very close to his mother, but couldn't seem to find his place. He lost his community connection. He started spending time with older acquaintances who took advantage of him. He started smoking marijuana.

His first contact with the criminal justice system was a possession of marijuana at age 15. To his credit, he complied with the court order, completed 25 hours of community service and the SAFE program to earn a dismissal. Unfortunately he got another possession of marijuana charge at age 16 and was found guilty.

His serious brush with the juvenile justice system came at age 16 when he was arrested for a number of felonies. The court ordered him to complete the BETA program: six months in the Juvenile Detention Center and six months of after care. He completed both portions of the program as ordered, and the judge reduced the felony adjudications to misdemeanors.

B.     OFFENSE CONDUCT AND ROLE IN THE OFFENSE

No doubt, a teenager's dealings with the Juvenile Justice system are likely to have a lasting effect on his life. But no one could have predicted this outcome.

In BETA, Mr. Sayf met Brandon Sullivan. Brandon Sullivan was his introduction to the Reccless Tigers. While Mr. Sayf never actually became a member of Reccless Tigers he was

friends or associates with many of them, spent time with them and was engaged in criminal activity with them, beginning with a marijuana connection.

Mr. Sayf's behavior at this time included daily, chronic substance abuse. The buying and selling of drugs led to massive debt. The gang system is designed to keep lower level users and sellers in debt and thus subject to the control of the more powerful members of the group. When Mr. Sayf was in debt (as he usually was), he was subject to disciplinary measures just as the gang members were. He was assaulted on more than one occasion.

Unfortunately, with repetition comes acceptance. Getting beat up just wasn't that big of a deal in the drug community. So, when Sayf was approached with the offer that his drug debt would be forgiven if he participated in bringing Brandon White to the Reccless Tigers, it seemed like a good deal.

Sayf had no idea that there was a plan, if indeed there was, to kill Brandon White. He had no knowledge that the gang had committed any other murders. He had been beaten up himself and accepted the beating as just part of the terrain - just a cost of doing business. Sayf held no position with the Reccless Tigers that would cause them to confide in him.

Once they met, the Tiger crew drove off, leaving Sayf in the parking lot.

    **C.    THE GUIDELINE RANGE**

18 U.S.C. § 3553(a) requires the Court to consider the advisory sentencing guidelines. We have no dispute with the probation officer's calculation.

However, it is important to note that the advisory range escalates to a level 43 minus 3 levels for his acceptance of responsibility because of the murder that ultimately occurred. Without making any excuses for Mr. Sayf's conduct, the Court should consider that Mr. Sayf did

not commit a murder, indeed he was not aware that there was going to be a murder. Based on his past history with the Reccless Tigers, he had no reason to believe a murder was planned.

D. **THE NEED FOR RESTITUTION**

No restitution issues in this case have been resolved.

E. **THE NEED FOR THE SENTENCE TO REFLECT THE SERIOUSNESS OF THE OFFENSE, PROMOTE RESPECT FOR THE LAW AND PROVIDE JUST PUNISHMENT FOR THE OFFENSE AND PROTECT THE PUBLIC**

Mr. Sayf acknowledges the seriousness of this offense. His remorse is not limited to his actions on January 31. 2019. He is remorseful for the many poor decisions he made as he traveled down the path to that day. He is cognizant of the harm to the community that resulted from his decisions and as well as the potential for additional harm.

It is hard to imagine the life of this friendly, cheerful, well-loved young man turning so quickly onto that downward trajectory. Mr. Sayf has continually expressed his remorse and has accepted responsibility in every way he can.

It is likely that the significant substance abuse which began at age 15 is a contributing factor. His primary drug of abuse was marijuana but that was not the only drug. He was under the influence most of the time, making extremely poor decisions and failing to foresee consequences.

This last year and a half has been personally traumatic. As the Court can see, he has accepted responsibility through his guilty pleas and his statement to the probation officer. He has had to openly discuss his failures, the worst moments in his life, and his crimes with both strangers and those who love him most. He must live with the fact that someone he thought of as

a friend died when he set that meeting into motion.

Yes, he is sorry for what he did and how he was living his life. But it is much more. This is a young man of faith with a good, strong moral fiber. He struggles with where to go from here. How can he make up for what happened to Brandon White? How can heal his family? How can he make reparations? Mr. Sayf struggles everyday with these overwhelming unanswerable questions.

There is no reason to believe he will ever find himself in this situation again. He will serve his sentence, as he must. He will use that time to become a better person, and when he is released his family, whose love has never wavered, will be there for him.

## CONCLUSION

For all the reasons stated herein as well as that already available to the Court, Mr. Sayf asks the Court to sentence according to his agreement with the Government at this time.

Due to his significant substance abuse history, he asks that the Court recommend him the Residential Drug Abuse Program (RDAP).

Respectfully Submitted,

ABDULLAH ABDOW SAYF
By Counsel

_/s/ Crystal A. Meleen_
Crystal A. Meleen            VSB# 33582
Keats & Meleen, PLC
10521 Judicial Drive, Suite 310
Fairfax, VA 22030
703-273-3190
703-383-1241 (fax)
cam@lmslaw.org
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that a foregoing Position on Sentencing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to the following:

Carina Cuellar
Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
carina.cuellar@usdoj.gov

James L. Trump
Assistant U.S. Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
jim.trump@usdoj.gov

                                              */s/   Crystal A. Meleen*
                                          Crystal A. Meleen         VSB# 33582
                                          Keats & Meleen, PLC
                                          10521 Judicial Drive, Suite 310
                                          Fairfax, VA 22030
                                          703-273-3190
                                          703-383-1241 (fax)
                                          cam@lmslaw.org
                                          *Counsel for Defendant*